IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION

**HOMEVESTORS OF AMERICA, INC.,**

    Plaintiff,

v.

**STEPHEN CHATTO,** and
**JASON RAMOS,**

    Defendants.

Civil Action No. _____

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, HomeVestors of America, Inc. ("HomeVestors") files this Complaint asserting claims against Defendants, Stephen Chatto ("Mr. Chatto") and Jason Ramos ("Mr. Ramos), (collectively "Defendants") for trademark infringement in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act) and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A) (Section 43(a)(1)(A) of the Lanham Act), as well as trademark infringement, unfair competition and unjust enrichment under New Jersey law.

HomeVestors seeks: (1) actual, treble, and exemplary damages from Defendants; (2) a preliminary injunction, and after trial, a permanent injunction; and (3) HomeVestors' attorney's fees and costs of court.

### PARTIES

1.     HomeVestors is a Delaware corporation with its principal place of business at 6500 Greenville Avenue, Suite 400, Dallas, Texas 75206.

2.     On information and belief, Defendants have a business address at 354 S. Broad St. #102G, Trenton, NJ 08608 and are partners in a real estate business operating under the name

Good Vibes Real Estate Solutions. On information and belief, Defendants are the moving forces behind the infringing activities complained of herein and have an interest in the financial outcome of their real estate business and its activities.

3. Mr. Chatto is the registrant of the domains <goodvibesrealestatesolutions.com> and <iwantmyoffer.com>, at which locations Defendants control and/or operate goodvibesrealestatesolutions.com (the "good Vibes Website") and iwantmyoffer.com (the "I Want Website") (collectively, the "Websites"). The domains and the Websites are available to and directed at residents of this District.

### JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over the Lanham Act claims in this action under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the New Jersey state law claims in this action under 28 U.S.C. § 1367(a) because these claims arise out of the same transactions and occurrences giving rise to the federal Lanham Act claims and are so related to those claims as to be a part of the same case or controversy. The Court has original jurisdiction over HomeVestors' unfair competition claim under 28 U.S.C. § 1338(b).

5. The Court has personal jurisdiction over Defendants because Defendants are citizens, reside, and do business in the State of New Jersey. The Court also has personal jurisdiction over Defendants because the acts that are the subject of HomeVestors' claims, including trademark infringement and unfair competition, were committed by Defendants in the State of New Jersey.

6. Under 28 U.S.C. § 1391(b)(1), venue is proper in this District because Defendants reside in and are residents of New Jersey. Venue is also proper under 28 U.S.C. § 1391(b)(2)

because a substantial part of the events giving rise to the claims of this action occurred in this District.

### FACTUAL BACKGROUND

### HomeVestors' Business

7. HomeVestors was founded and began franchising its business in 1996. HomeVestors has over 600 franchisees across 44 states that operate under strict codes and systems to ensure high ethical standards and responsible business practices. Over the years, HomeVestors and its franchisees have bought more than 60,000 houses.

8. HomeVestors is known as the WE BUY UGLY HOUSES® people and is the number one buyer of houses in the United States. HomeVestors franchisees buy homes that are difficult to sell and pay cash to owners in challenging situations. HomeVestors franchisees rehabilitate the houses and then sell or lease the homes. This process improves neighborhood aesthetics and provides opportunities for first-time homebuyers, other homebuyers, and renters.

9. HomeVestors offers low-cost franchising opportunities to investors seeking to enter the business. Its unique business model includes a proprietary software system used in evaluating the potential value of single-family homes for purchase and repair. HomeVestors and its franchisees also employ a mass advertising campaign based on high-impact billboards, nationwide television commercials, and widespread Internet advertising that has achieved nearly universal market awareness for HomeVestors' trademark portfolio, which is discussed in detail below. HomeVestors also utilizes a direct-selling program that assists franchisees in identifying buyers or investors who may already have a vested interest in improving the relevant neighborhoods.

10. HomeVestors has received numerous honors and awards. In 2015, HomeVestors was recognized as the 19th fastest growing franchise by Entrepreneur Magazine. In 2016, HomeVestors was recognized as number 91 in the Franchise 500 by Entrepreneur Magazine. Furthermore, in 2015, SMU Cox School of Business named HomeVestors as number 28 in the "Dallas 100" fastest-growing private companies based in Dallas. HomeVestors was the only home buying franchise on each of those lists. Also in 2015, and for the tenth consecutive year, HomeVestors was named to Franchise Business Review's "Top 50 Franchises," a distinction awarded to franchisors with the highest level of franchisee satisfaction. HomeVestors has built substantial goodwill in its name and business practices among both consumers and its franchisees.

### HomeVestors owns substantial trademark rights through its significant use in commerce of its trademarks.

11. HomeVestors possesses extensive valuable rights in its intellectual property, including a family of U.S. trademarks listed in the chart attached hereto as Exhibit A ("HomeVestors' Family of Marks").

12. HomeVestors owns and has used the Ugly Houses Marks (defined below) since at least as early as 2000 and has built substantial brand-name recognition through the use of these marks. Through continuous and exclusive use in commerce, HomeVestors' Ugly Houses Marks have achieved incontestable status. Specifically, the following marks have become widely recognized in the industry, and HomeVestors has built significant goodwill in those marks: WE BUY UGLY HOUSES® & Design (Reg. No. 2,761,385); WE BUY UGLY HOUSES® (Reg. No. 3,099,814); COMPRAMOS CASAS FEAS® (Reg. No. 2,988,337); COMPRAMOS CASAS FEAS® (Reg. No. 2,982,363); WE BUY UGLY HOUSES® (Reg. No. 2,999,705); WE BUY UGLY HOUSES AND MAKE THEM NICE AGAIN® & Design (Reg. No. 2,827,136);

UGLY'S OK® Stylized (Reg. NO. 2,797,429); UGLY'S OK® (Reg. No. 2,794,480); WE SELL LUVLY HOUSES.COM® (Reg. No. 3,658,442); THE UGLIEST HOUSE OF THE YEAR® (Reg. No. 3,641,362); THE UGLIEST HOUSE OF THE YEAR® & Design (Reg. No. 3,641,361); THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,350,752); WE BUY THE GOOD, THE BAD AND THE UGLY® (Reg. No. 3,307,918); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,188,593); SOLUTIONS FOR UGLY SITUATIONS® (Reg. No. 3,185,390); UG BUYS UGLY HOUSES® (Reg. No. 2,999,978); and UG BUYS UGLY HOUSES® (Reg. No. 2,935,916). Registration Nos. 2,761,385; 3,099,814; 2,988,337; 2,982,363; 2,999,705; 2,827,136; 2,797,429; 2,794,480; 3,658,442; 3,641,362; 3,641,361; 3,350,752; 3,307,918; 3,188,593; 3,185,390; 2,999,978 and 2,935,916 are collectively referred to as the "Ugly Houses Marks."

13.     Over the years, HomeVestors has spent significant amounts of time and resources in developing its brand and maintaining the goodwill it has built in its trademarks. HomeVestors and its network of franchisees have spent over $100 million on advertising over the course of the past 10 years, which includes advertising on the Internet, radio, television, magazines, and billboards seen throughout the country. The HomeVestors brand is readily and widely recognized in the industry and among the general public.

### Defendants control and/or operate the Websites using phrases identical to and confusingly similar to the Ugly Houses Marks, thereby committing acts of infringement and unfair competition.

14.     Defendants control and/or operate the Websites. The Websites are direct competitors with HomeVestors and its franchisees. The Websites advertise the buying of houses that are difficult to sell. Such advertising is directed to residents of this District.

15. The Websites use phrases identical to and confusingly similar to the Ugly Houses Marks to attract consumers to Defendants' real estate business. This unauthorized use of the Ugly Houses Marks and confusingly similar phrases result in acts of infringement and unfair competition.

16. HomeVestors has sent communications to Mr. Chatto on numerous occasions, beginning in February 2015, regarding Defendants' infringing use of the Ugly Houses Marks from within the I Want Website. A true and correct copy of the letter dated February 27, 2015 from counsel for HomeVestors to Mr. Chatto and the certified mail proof of delivery signature is attached hereto as Exhibit B.

17. Defendants did not respond to the February 27, 2015 letter, but changed the repeatedly used phrase "We Buy Ugly __ Houses" to "We Buy Awful __ Houses." Since Defendants did not respond with an agreement to cease from further infringing use, Counsel for HomeVestors continued to monitor Defendants' advertising of their real estate services.

18. On or about December 2015, through a cached search result, counsel for HomeVestors found Defendants had again been using HomeVestors' WE BUY UGLY HOUSES mark within the text of the I Want Domain. A true and correct copy of an image of the search result and cached page showing use of HomeVestors' mark are attached hereto as Exhibit C.

19. On or about December 2015, counsel for HomeVestors found repeated use of the Ugly Houses Marks and confusingly similar phrases within Defendants' Good Vibes Website. A letter dated December 29, 2015 was sent from counsel for HomeVestors to Defendants via certified mail and email, again requesting Defendants cease use of the Ugly Houses Marks. Despite further follow up communications from counsel for HomeVestors to Defendants, no

response has been received and Defendants continue to use the Ugly Houses Marks and confusingly similar phrases for the purpose of directing traffic to the Websites.

20. At least as recently as March 11, 2016, the Good Vibes Website contained the phrases "We Buy Ugly Houses," "We Buy Ugly ___ Houses," and confusingly similar phrases used repeatedly within the web page titles, in bold colored text on the face of the web pages, within URL extensions, source code, and meta tags. The I Want Website contained the use of the phrase "Ugly Houses" in close proximity to the phrase "We Buy" repeatedly in bold colored text on the face of the web pages and within the source code. Social media posts advertising for and directed to the Websites contained the phrase "We Buy Ugly Houses" and confusingly similar phrases. A true and correct copy of images of the Websites, source code of the Websites, and social media posts showing a representative sample of the type of infringing use found is attached hereto as Exhibit D.

21. Counsel for HomeVestors never received a response from Defendants indicating a willingness to comply with HomeVestors' requests or to try to come to an amicable resolution to the issues, and Defendants continue to use the Ugly Houses Marks and confusingly similar phrases within the Websites and social media posts to advertise for their competing real estate business.

**Unless Defendants are enjoined, HomeVestors will suffer irreparable harm for which it has no remedy at law.**

22. Unless Defendants are enjoined, HomeVestors will suffer irreparable harm. Defendants will continue to trade on the goodwill HomeVestors has built in its marks. Defendants will profit unfairly from their trademark infringement, unfair competition, and other wrongs. In advertising for Defendants' business, Defendants will continue to use the trademark terms in which HomeVestors has built substantial goodwill. This use of phrases infringing the

Ugly Houses Marks diverts business that otherwise would belong to HomeVestors and causes initial interest confusion. Moreover, HomeVestors has no ability to control the quality of the services provided by Defendants in conjunction with the Ugly Houses Marks, and therefore, is at risk of irreparable harm for which there is no remedy at law and for which money damages cannot repair.

23. By way of example, if customers of Defendants experience inferior services, they will likely mistakenly attribute that bad experience to HomeVestors and its franchisees due to Defendants' adoption of the same marks. This is heightened by Defendants' strategy of providing the same or similar services to the same customer base using the same advertising channels in connection with the same marks. As established above, these actions are taken intentionally by Defendants as part of a scheme to trade on the goodwill built by HomeVestors through its investment of time, efforts, and advertising in the HomeVestors Registered Marks. Defendants are intentionally trading off the goodwill HomeVestors has built up in its marks over years of use and promotion.

## GENERAL ALLEGATIONS

### COUNT I
### Trademark Infringement Under 15 U.S.C. § 1114 (Section 32 of the Lanham Act)

24. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

25. Defendants' acts committed in the course of Internet commerce constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, of the Ugly Houses Marks. As established by the registration for the marks, the marks are protectable and enforceable against Defendants, HomeVestors is the owner of the marks, and HomeVestors is the senior user of the marks. Moreover, Defendants' actions have caused a likelihood of

confusion and damage to HomeVestors. In particular, through infringement of the Ugly Houses Marks, Defendants are harming HomeVestors and diverting sales that would otherwise go to HomeVestors. Defendants' infringement of the Ugly Houses Marks is likely to cause confusion and mistake as to the source of Defendants' services.

26. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

27. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its actual damages. Due to the exceptional nature of this case, HomeVestors also seeks its reasonable attorney's fees.

**COUNT II**
**Unfair Competition Under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act)**

28. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth at herein.

29. Defendants' acts committed in the course of interstate commerce constitute materially false and misleading misrepresentations of fact with respect to the origin of

Defendants' services, and the affiliation, sponsorship, and approval of Defendants' services in violation of Section 43(a)(1)(A) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A).

30. In accordance with Section 34 of the Lanham Act, 15 U.S.C. § 1116, Defendants should be preliminarily and, upon hearing, permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

31. Under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), HomeVestors is entitled to recover from Defendants: (i) Defendants' profits, (ii) the damages sustained by HomeVestors, and (iii) the costs of this action. Due to the knowing, intentional, and purposeful nature of Defendants' conduct, HomeVestors seeks treble the amount of its damages. Due to the exceptional nature of this case, HomeVestors seeks its reasonable attorney's fees.

## COUNT III
### Trademark Infringement in Violation of New Jersey Law

32. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

33. As established above, HomeVestors is the senior user of its marks and enjoys priority over Defendants. HomeVestors' substantial use of these marks in commerce has resulted in the marks being protectable and enforceable. Defendants' use in commerce of the Ugly Houses Marks and confusingly similar marks in connection with competing services

constitute infringement of HomeVestors' common-law rights to its marks. Defendants' use of the marks is likely to cause confusion or mistake as to the source of Defendants' services.

34.     In accordance with New Jersey law, Defendants should be preliminarily and permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword bidding or advertising, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

## COUNT IV
## Unfair Competition under New Jersey Law

35.     HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

36.     Defendants have engaged in commerce in the State of New Jersey by marketing, offering to sell, and selling Defendants' competing services. Defendants have advertised their services on their active Websites. Defendants have competed unfairly in violation of New Jersey law by misrepresenting or misleading the public to believe that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors.

37.     In accordance with New Jersey law, Defendants should be preliminarily and permanently enjoined from using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark or service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy,

11

social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendants' services.

38. HomeVestors has been damaged by Defendants' actions. Under New Jersey law, HomeVestors is entitled to recover its actual damages caused by Defendants' unfair competition and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

## COUNT V
## Unjust Enrichment Under New Jersey Law

39. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

40. As set forth above, Defendants have used the Ugly Houses Marks and HomeVestors' goodwill as an integral step of Defendants' sales of their services. On information and belief, Defendants have received a direct pecuniary benefit from these unlawful acts. Defendants are therefore unjustly enriched to HomeVestors' detriment. As a result, HomeVestors is entitled to recover its actual damages caused by Defendants' unjust enrichment.

## Application for Preliminary and Permanent Injunction

41. HomeVestors repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

42. On information and belief, Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their services are sponsored by, approved by, affiliated with, associated with, or originated by HomeVestors and infringe the Ugly Houses Marks by using those marks or confusingly similar variations thereof to identify Defendants' competing services.

43. All of these acts violate the Lanham Act and New Jersey law.

44.   These actions entitle HomeVestors to a preliminary injunction and, upon hearing, permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all those persons in active concert or in participation with them from:

   (i)   Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by HomeVestors;

   (ii)   Representing Defendants are HomeVestors;

   (iii)   Using the Ugly Houses Marks and any confusingly similar variation thereof, alone or in combination with other words, as a trademark, service mark, corporate name, trade name component, domain name or domain name component, in Internet keyword advertising or bidding, in meta tag data, blog posts, articles, banners or titles in content copy, social media posts, handles, account and user names, hash tags, vehicle advertisements, signs, billboards, or otherwise, to market, advertise, or identify Defendant's services; and

   (iv)   Otherwise competing unfairly with HomeVestors or injuring its business reputation in any manner.

45.   For these actions, there is no adequate remedy at law. Further, HomeVestors is substantially likely to prevail on the merits of these claims. The injury to HomeVestors greatly outweighs any injury to Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of HomeVestors. Finally, the injunction will not disserve the public interest. Therefore, HomeVestors is entitled to preliminary and permanent injunctive relief against Defendants.

### REQUEST FOR RELIEF

For the foregoing reasons, HomeVestors respectfully requests the Court to:

1. Award HomeVestors its actual, treble, and exemplary damages;

2. In accordance with New Jersey law and 15 U.S.C. § 1116, issue a preliminary and permanent injunction enjoining Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with Defendants from the acts described in this Complaint;

3. Order Defendants and their officers, agents, servants, employees, franchisees, and all those persons in active concert or participation with them, to identify all third parties to whom Defendants have represented themselves to be the organization behind the Ugly Houses Marks or somehow sponsored by, approved by, affiliated with, or associated with HomeVestors and all third parties to whom Defendants have distributed any type of materials incorporating the Ugly Houses Marks;

4. Order Defendants and their officers, agents, servants, employees, franchisees, if any, and attorneys, and all those persons in active concert or participation with them, to identify all other websites containing the Ugly Houses Marks;

5. Order Defendants to provide an accounting of all sales, revenues, and profits related to Defendants' services that infringe the Ugly Houses Marks and that are falsely designated as being sponsored by, approved by, affiliated with, or associated with HomeVestors;

6. In accordance with 15 U.S.C. § 1118, order all materials in Defendants' possession or control bearing the Ugly Houses Marks be surrendered for destruction;

7. In accordance with New Jersey law and 15 U.S.C. §§ 1117(a) and (d), award HomeVestors all of Defendants' profits from the aforesaid acts of unjust enrichment, trademark infringement, and unfair competition;

8. In accordance with New Jersey law and 15 U.S.C. § 1117(a), find this case to be exceptional in HomeVestors' favor and award HomeVestors its reasonable attorney's fees, costs, and expenses of this action;

9. Award HomeVestors its costs and pre-judgment and post-judgment interest at the maximum allowable interest rate; and

10. Grant HomeVestors such other relief, at law or in equity, to which it is justly entitled.

Dated: March 16, 2016					Respectfully submitted,

										**ROYER COOPER COHEN BRAUNFELD LLC**

										*/s/ Barry L. Cohen*
										Barry L. Cohen
										bcohen@rccblaw.com
										(BLC0449)
										Sean S. Litz
										slitz@rccblaw.com
										031332006
										101 W. Elm Street, Suite 220
										Conshohocken, PA 19428
										P. 484-362-2620
										F. 484-362-2630

										*Attorneys for Plaintiff, Homevestors of America, Inc.*